## Martin and others *vs.* O'Conner.

A covenant on the part of lessees, to pay taxes and assessments, ordinary and extraordinary, is a covenant real, running with the land, and an action can be maintained on it, by the lessor, against an *assignee* of the lessees; but not against an *under tenant* of the lessees, or against an *assignee* of such *under tenant*.

In 1815, M. leased to the M. E. Church, two lots of land for the term of forty years, the lessees covenanting to pay a specified rent, and to pay and discharge the taxes and assessments, ordinary and extraordinary. In April, 1837, the M. E. Church granted and demised the lots to H. for eighteen years, being the residue of their term, H. covenanting, for himself and his assigns, to pay the taxes and assessments. In 1843 H.'s administrator sold and assigned to the defendant the last mentioned lease, to have and to hold the premises for and during the residue of said term of eighteen years therein mentioned, subject to the rents, covenants, &c. therein also mentioned. The plaintiffs succeeded to the title of the original lessor, M., and just before the termination of the original lease, in 1855, were compelled to pay an assessment laid upon the property.

*Held* that though the lease by the original lessees, to H. was a lease of the whole unexpired term, yet as it contained a covenant on the part of H. to surrender up the possession of the premises to *his* lessors, at the expiration of the term, and also a covenant to pay the rent to his lessors, and a provision giving his lessors a right of re-entry in case of non-payment of the rent, or a breach of any of the covenants, the case of *Post* v. *Kearney,* (2⟶ N. Y. Rep. 394,) was in point to show that H. was the under tenant, and not the assignee of the original lessees; and that therefore no action could be maintained, either against him or his assignee, on the covenant by the original lessees to pay the taxes and assessments.

ON the 1st of May, 1815, Michael Varian leased to the trustees of the Methodist Episcopal Church two lots in the city of New York, for the term of *forty years*, for the annual rent of one hundred dollars, payable quarterly, the lessees covenanting to pay and discharge all such taxes and assessments, "both ordinary and extraordinary," as shall or may, during the said term hereby granted, be charged, assessed or imposed upon the said demised premises. By indenture, dated April 29, 1837, the Methodist Episcopal Church granted and demised the same property to one Hagadorn, for eighteen years from the 1st of May, 1837, being the residue of their term, for the same rent of one hundred

dollars, payable to them quarterly, and Hagadorn covenant-
ed for himself and assigns to pay and discharge all taxes and
assessments, &c., in the same language as that used in the
original lease.   The church also, by the same indenture, sold
to Hagadorn the buildings on the premises, with the same
right to remove them at the end of the term that the church
had in the lease from Varian.   Hagadorn's administrator,
by assignment dated May 1, 1843, in consideration of five
thousand and fifty dollars, sold and assigned to the defend-
ant the lease last above described, with the buildings and
appurtenances, "to have and to hold the same" for and
during all the rest, residue and remainder yet to come, of and
in the term of eighteen years mentioned in the said indenture
of lease, *subject, nevertheless, to the rents, covenants, condi-
tions and provisions therein also mentioned.*   The plain-
tiffs succeeded to the title of the original lessor, Michael
Varian, and were obliged to pay and did pay an assessment
laid upon the property described, for widening Walker and
extending Canal street, confirmed on or about the 1st of
April, 1855, just before the termination of the original lease,
which expired May 1, 1855.   The action was brought to re-
cover the money so paid.   The cause was tried without a
jury, and the judge dismissed the complaint on the ground
that neither Hagadorn nor the defendant was bound to the
plaintiffs by the covenant of the original lessees to pay the
assessment.   The plaintiffs appealed from the judgment en-
tered on this decision.

*S. P. Nash,* for the appellant.   I.  By the original lease,
the lessees, the trustees of the Methodist Episcopal Church,
were bound to pay and discharge the assessment in question.
When they demised to Hagadorn, they demised the whole
remaining portion of their term, the original lease being for
forty years from May 1, 1815, the lease to Hagadorn eight-
een years from May 1, 1837.   The rent reserved in each case
was one hundred dollars.   Hagadorn covenanted for himself

Martin *v.* O'Conner.

*and assigns,* that he would pay all *assessments,* &c.   Hag-
adorn's administrator assigned this lease and the unexpired
term to the defendant, subject to the covenants in the said·
lease mentioned.   Now, whether the sub-lease to Hagadorn
was or was not equivalent to an assignment, Hagadorn, by his
express covenant with the trustees, was bound to pay the
assessment in question.   The defendant was undeniably as-
signee of Hagadorn's term, and bound by his covenant.   It
is clear, therefore, that as between the plaintiffs, as succes-
sors of the original landlord, and the trustees of the church,
the trustees were bound to pay the assessment in question ;
as between the trustees and Hagadorn, Hagadorn was bound
to pay it ; as between Hagadorn and the defendant, the de-
fendant was bound to pay it.   Unless, therefore, there is
some rule of procedure which prevents the plaintiffs enforc-
ing this liability directly against the defendant, instead of
mediately through the trustees and Hagadorn, the plaintiffs
ought to recover.   The plaintiffs contend that, under the
circumstances of this case, there is no technical rule to pre-
vent such recovery.

I. An action at law will lie on a promise made by a de-
fendant, upon a valid consideration, to a third person, for the
benefit of the plaintiffs, though the plaintiffs were not privy
to the considertation ; as where the defendant, a purchaser
from a mortgagor, assumed with him to pay off a mortgage
held by the plaintiff.   (*Burr* v. *Beers,* 24 *N. Y. Rep.* 178.
*Lawrence* v. *Fox,* 20 *id.* 268.)   Hagadorn, the lessee in the
lease of 1837, was chargeable with notice of the covenants ·
in the lease of 1815, from Varian to the trustees.   (*Cosser*
v. *Collinge,* 3 *M. & K.* 283.)   He made with them the
same covenant, as to assuming and paying off taxes and as-
sessments, which they had made with Varian ; and this per-
sonal engagement of Hagadorn with the trustees enured,
therefore, to the benefit of the original landlord, and could
have been enforced by him within the cases above cited.
2. Such right of action of the original landlord, Michael

Martin *v.* O'Conner.

Varian, could not, perhaps, assuming that Hagadorn was a sub-tenant, not an assignee, have been enforced by an assignee of the reversion in his own name, at common law, nor under the statute of 32 *Henry* 8, *chap.* 34. (1 *R. S.* 747, § 234, *marg. pages. Van Rensselaer* v. *Read*, 26 *N. Y. Rep.* 558, 579.) But under the code, the common law rule, that an assignee of a chose in action could not sue in his own name, is abrogated, and actions are now prosecuted in the name of the real party in interest. (*Code*, § 111.) Michael Varian's right of action against Hagadorn could, therefore, be prosecuted in the name of the plaintiff, as his successors in the ownership of the reversion. 3. The defendant took, expressly subject to this covenant of Hagadorn, and is liable to the same extent he would have been. He took an assignment of Hagadorn's term; he was not in as under-tenant of Hagadorn, but as assignee. He also, by the terms of the assignment, took, *subject to* Hagadorn's covenants. (*See Halsey* v. *Reed*, 9 *Paige*, 446; *King* v. *Whitely*, 10 *id.* 465; *Trotter* v. *Hughes*, 2 *Kernan*, 74; *Burr* v. *Beers*, 24 *N. Y. Rep.* 178; *Gridley* v. *Gridley*, *Id.* 130, 135–7.) These cases established a rule, that where the owner of property subject to or on which he has created a charge which he is personally liable to pay, conveys it to another who assumes the liability, the latter becomes personally bound to the creditor. Here Hagadorn, the owner of the term subsequently assigned to the defendant, made a covenant which became a charge upon and ran with the land. On this covenant he was personally liable to Michael Varian, the original landlord, and to his assigns; the plaintiff by taking an assignment of the term from Hagadorn, the defendant assumed his covenants and liabilities that ran with the land. (*Jacques* v. *Short*, 20 *Barb.* 269. *Allen* v. *Culver*, 3 *Denio*, 284. *Post* v. *Kearney*, 2 *Comst.* 394.) And the mortgage cases above cited are therefore in point to establish his liabilities.

II. The obstacles at common law to maintaining an action like the present were technical, and do not exist under the

Martin *v.* O'Conner.

code. 1. At common law the assignee of a right of action not negotiable could not maintain an action except in the name of his assignor. (1 *Chitty's Plead.* 15, 16.) But this rule did not exist in equity. (2 *Story's Eq.* § 1039, 1040, 1041.) The code has abolished the rule of the common law, and adopted that of equity. (§§ 111, 118.) This disposes of the objection that the action could not be maintained except in the name of the original lessor, Michael Varian. 2. The objection that Michael Varian, or his assignees, could not have sued Hagadorn, upon his covenant with the church, to pay the assessment which the church were liable to pay to Varian, is based upon a supposed want of privity of contract. But the modern cases disregard this objection, where the debt or liability which the first promissor has undertaken to pay is the same which the second promissor undertakes with him to pay, so that payment by the latter discharges both obligations. If A is a creditor to B, and C promises B that he will pay the debt, A may sue C directly, though the promise be not made to him. (*The Delaware and Hudson Canal Co.* v. *The Westchester Co. Bank,* 4 *Denio,* 97 ; and see *Peck* v. *Ingersoll,* 3 *Seld.* 528.) And where the assignee or sub-tenant himself covenants absolutely, as here, to perform the covenant of the original lessee, he is directly liable for a default. (*Jackson* v. *Port,* 17 *John.* 479.)

III. But the indenture from the church to Hagadorn, though in the form of a demise, transferred the whole term and left no scintilla of reversionary interest. (*Prescott* v. *De Forest,* 16 *John.* 159.) This case therefore is unlike the following cases, where there was a clear reversionary interest reserved, though the sub-lessee took substantially the whole term. He did not take the whole *estate.* (*Post* v. *Kearney,* 2 *Comst.* 394. 1 *Sand. S. C. R.* 105, *S. C.*) See the case in Sandford, for the terms of the sub-lease. (*Piggot* v. *Mason,* 1 *Paige,* 414. *The People* v. *Robertson,* 39 *Barb.* 9.)

IV. As the defendant was clearly assignee of Hagadorn, and as such liable to the church to pay the assessment in

question, and as the church was as clearly liable to the plaintiffs, the dismissal of the complaint was erroneous, and a new trial should be awarded.

*E. N. Taft,* for the respondent. The lease of the corporation of the Methodist Episcopal Church to Hagadorn, constituted an under-letting, and not an assignment, of the lease first above-named. (*Post* v. *Kearney,* 2 *Comst.* 394.) This case is exactly in point, and is decisive of the question that an under-tenant is not liable in such a case. (*See McFarlan* v. *Watson,* 3 *Comst.* 287.) An assignee of a lease ceases to be liable after he makes an assignment of the lease, and, therefore, in the case of *Post* v. *Kearney,* if the defendant had established that he had assigned the lease to Shepherd, he would not have been liable. He was held liable on the ground that it was not an assignment, but a sub-letting. (*Childs* v. *Clark,* 3 *Barb. Ch.* 52.) On the argument in the court below, reference was made to the report of the case of *Post* v. *Kearney,* in the superior court, (1 *Sandf. S. Ct. R.* 105,) and from that it was claimed, that the decision in the court of appeals did not turn upon the *reason given in the opinion.* In the opinion given in the superior court, there are four particulars mentioned, upon which the decision is based, to wit: 1st. "It (the lease) reserved to himself the payment of an annual rent four times as great as that reserved in the lease." 2d. "*The possession was to be delivered to him at the end of the term.*" 3d. "In case of the destruction of the buildings by fire, the whole demise to Shepard was to terminate;" and 4th. "Shepard, if he held to the end of the original term, was to have no interest in the payment for the buildings, or in the alternative renewal." Upon which of these the court laid the most stress, and whether or not the court considered any one of them as sufficient by itself to warrant its decision, or whether all were considered to be entitled to equal weight, does not appear.

Certain it is that the court cites the fact "that *the pos-*

*session* was to be delivered to him " (*Post*) "at the end of the term." And certain it is and significant, that in the statement of the case in the court of appeals, *that fact is italicised,* and that, and the form of the lease, and the reservation of rent to the alleged assignor, are selected by the court as the ground and premise of its conclusion. Surely it can not justly be claimed that the court of appeals did not pass upon the force of the facts mentioned as the ground of their decision ; but that their decision should be considered by this court to have been upon some other ground not referred to. What the court of appeals state as the ground of their decision is exactly what exists in the case before the court. Of course we must take the court's own statement of the law of that case. It is as follows : " The lease between the parties last mentioned, is in the usual form, with covenants by the lessee for the payment of rent, and for the *surrender* of the premises, at the close of the term, in good order and condition. Shepard THEREFORE did not hold the premises as assignee, but as the under-tenant of the defendant." The superior court speaks of rent being reserved to Post, and also of its being greater than in the lease claimed to have been assigned. The court of appeals speaks simply of the fact that there was the usual covenant by Shepard for the payment of rent to Post. The essential thing seems to have been the *right of Post to the rent,* and not the *amount of rent, whether more or less.* The superior court mentions the fact, that "in case of the destruction of the buildings by fire, the whole demise to Shepherd was to terminate. The court of appeals does not refer to this. And does this provision retain any estate in Shepherd, or, in other words, if the whole estate of Shepherd would have passed without this provision, would it not with it ? The following authorities will show that this provision of itself left no estate or reversion in Post. The estate would have passed, had it not been for other reasons, subject only to be defeated by a condition subsequent. (4 *Kent's Com.* 354 *in margin.*

2 *Preston on Ab.* 88. *Payn* v. *Beal,* 4 *Denio,* 411. *De Peyster* v. *Michael,* 2 *Seld.* 467.) But observe that there is a similar provision in the lease before the court, giving the right to Jacob F. Hagadorn's lessor to re-enter on the non-payment of rent by him. If there is a reversion in the one case, there is in the other. The right to the appraised value of the buildings, unless the lessor should elect to renew the lease, was not an estate, or any part of an estate. This right in Post constituted no part of the term or estate for years created by the lease. There is, I think, every reason to believe, *aside from this statement of the court itself,* that the lease being in the usual form, with covenants by the lessee for the payment of rent, and for the surrender of the premises at the close of the term to Post, formed the essential ground of the decision. But however this may be, that statement found in the opinion of the court must be decisive of the question. And as in the case before the court, the lease to Hagadorn from the lessees in the original lease was in the usual form, with covenants by the lessee for the payment of rent, and for the surrender of the premises at the close of the term, in good order and condition to Hagadorn, it would seem clear that the decision of the court of appeals in *Post* v. *Kearney* must authoritatively determine this case in favor of the defendant and respondent.

*By the Court,* SUTHERLAND, J. There is no doubt that the covenant on the part of the lessees in Varian's lease, to pay the taxes and assessments, is a covenant real running with the land, and that an action could have been maintained on it by the lessor against an *assignee* of the lessees ; but it is equally clear that no action can be maintained on it against an under-tenant of the lessees, or against an assignee of such under-tenant.

Though the lease of the original lessees (the trustees, &c.) to Hagadorn, was a lease of the whole unexpired term, yet, as it contained a covenant on the part of Hagadorn to sur-

render up the possession of the premises to his lessors at the expiration of the term, and also a covenant on his part to pay the rent to his lessors, and as it contained a provision giving his lessors a right of re-entry in case of non-payment of the rent, or of a breach of any of the covenants on his part, I can not see why the case of *Post* v. *Kearney*, (2 *Comst.* 394,) is not in point to show, conclusively, that Hagadorn was the under-tenant, and not the assignee of the original lessees ; and that therefore no action could be maintained either against him or his assignee on the covenant by the original lessees to pay the taxes and assessments.

All this I understand to be virtually conceded by the counsel for the appellants ; but he makes an ingenious attempt, in his points, to bring another principle to the support of the action, that is, that an action at law will lie on a promise made by a defendant upon a valid consideration, to a third party for the benefit of the plaintiffs, though the plaintiffs were not privy to the consideration ; citing *Lawrence* v. *Fox*, (20 *N. Y. Rep.* 268,) and *Burr* v. *Beers*, (24 *id.* 178,) to illustrate the principle. But in view of the express covenant on the part of Hagadorn *with his lessors* (the original lessees) to pay the taxes and assessments, certainly no covenant on the part of Hagadorn *with the original lessor* can be implied ; and if Hagadorn made the express covenant as the under-tenant and lessee of the original lessees, and not as their assignee, the covenant must be presumed to have been for the benefit of his immediate lessors, and not for the benefit of the original lessor. To hold otherwise would be inconsistent with the decision in *Post* v. *Kearney*, (*supra*,) making Hagadorn an under-tenant and not an assignee. A covenant by Hagadorn as assignee to pay taxes, &c. might probably have been said to have been for the benefit of the original lessor, but the covenant by him as under-tenant to pay taxes, &c. must be deemed to have been made for the benefit of *his* lessors. The same circumstances, covenants and provisions in the lease to Hagadorn, which, according to the decision

of the court of appeals before referred to, made him an under-
tenant; and not an assignee, must be deemed to show that
his covenant to pay the taxes, &c. was for the benefit of the
party with whom it was made.

I think it follows from the decision of the court of appeals
in *Post* v. *Kearney*, (*supra*,) that the judgment dismissing
the complaint was right, and should be affirmed with costs. ·

[NEW YORK GENERAL TERM, February 6, 1865. *Ingraham*, *Clerke* and
*Sutherland*, Justices.]