W.F.I., Incorporated *v.* Heberts Business Furniture Company.

(No. 81 CVF 080220—Decided October 28, 1983.)

Cleveland Municipal Court.

*Mr. Timothy P. Ristau,* for plaintiff.
*Mr. Robert W. McIntyre,* for defendant.

ADRINE, J. This case came on for hearing on the complaint of the plaintiff and the answer of the defendant. At dispute are certain sums which the plaintiff alleges are due and owing to it under a lease agreement which it entered into with the defendant and which it now maintains the defendant breached. The defendant, for its part, maintains that it fully complied with its obligations under the lease. It contends further that it is the plaintiff which breached the agreement.

With the issues thus met, and after review of the merits and the applicable authority, the court announces the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. The plaintiff, W.F.I., Inc., is a closely held Ohio corporation, dealing primarily in real estate-related enterprises, including property management.

2. The defendant, Heberts Business Furniture Co., is a closely held Ohio corporation, dealing primarily in the retail sale of office and business furniture.

3. On May 9, 1980, the parties entered into a lease agreement for store space located in the 1900 Euclid Building, more precisely designated at 1852 Euclid Avenue, in the city of Cleveland, Ohio.

4. The lease covered a term of one year, commencing on May 1, 1980, and ending April 30, 1981.

5. Under the lease, the plaintiff and defendant herein were lessor and lessee respectively, and will be referred to as such herein.

6. The total amount due the lessor as rent under the terms of the lease was $44,400.

7. The lease called for the rent to be paid in equal monthly installments of $3,700.

8. The lease further provided that the lessor would provide heat for the leased space. However, water and electricity used by the lessee would be charged and billed to the lessee monthly.

9. Under the lease, all rent and other charges not paid when due were to bear interest at the rate of eighteen percent per annum.

10. The lease provided that the lessor could only be held liable for those injuries brought about by the lessor's neglect. The same provision specifically relieved the lessor from any liability for damage or injury "caused by water, * * * dampness, * * * the bursting or leaking of pipes, plumbing, * * *."

11. The holdover clause of the lease required that, unless a new agreement in writing was executed prior to expiration, the lessee's continued occupation of the leased space after expiration, with the permission of the lessor, would constitute the creation of a year-to-year tenancy.

12. In the case of a holdover, the lease gave the lessor the right to set the new rental rate.

13. All notices to the lessee required under the lease were to be either personally delivered or sent by registered mail.

14. The lessor warranted the plumbing to the leased space in good repair at the time the lease was signed and agreed to maintain it in the same condition during the life of the agreement.

15. Under the lease, maintenance of the premises was the responsibility of the lessee.

16. The premises were rented "as is."

17. Between August 4, 1980, and January 16, 1981, the lessee experienced eight problems involving water leaks in the leased premises.[1]

18. Various items of lessee's stock were lost as a result of these problems.

19. It was necessary for lessee's employees to divert their attention from other duties on these occasions to deal with problems caused by the leaks.

20. Lessee notified lessor's representative of the problems as they occurred and lessor made attempts to correct the problems.

21. The total value of the goods and services lost to the lessee as a result of these problems was $2,175.84.

---

[1] These problems occurred on August 4, 1980, September 22, 1980, September 29, 1980, October 27, 1980, October 29, 1980, November 14, 1980, January 5, 1981, and January 16, 1981.

22. Lessee held over in the leased premises for one month until May 30, 1981.

23. The holdover was with the lessor's consent.

24. Lessor set the new monthly rental at $4,144.

25. Notice of the increase in rent was not sent to the lessee by registered mail or personally delivered.

26. On September 30, 1981, lessee forwarded to the lessor a "final check" in payment of $6,904.05 in charges claimed outstanding by lessor at the time the premises were vacated. From the claimed amount the lessee deducted $229.90 in interest, $444 in increased rental and $2,189 in alleged damages suffered as a result of the water leaks. Thus, the face value of the aforementioned "final check" was $4,041.15.

27. Lessor declined to accept the "final check" from the lessee and returned it unnegotiated.

### Conclusions of Law

Initially it seems appropriate, although perhaps unnecessary, to restate the obvious. A lease is a contract and should be interpreted and construed like any other contract. *Glyco* v. *Schultz* (M.C. 1972), 289 N.E. 2d 919, 923. As such, the lease agreement under discussion here will be viewed in light of traditional contract law.

The defendant has not questioned the validity of the lease agreement which gives rise to the present dispute. Indeed, the lessee candidly admits that it owes some money to the lessor as a result of a one-month holdover in the leased premises. It disputes, however, the amounts which the lessor claims are due.

The lessee has advanced the following positions on what it considers to be the key issues to be resolved:

I. The lessee is not liable for the rental increase set by the lessor for the holdover period, from April 30, 1981 to May 30, 1981.

II. The lessor is liable for damages suffered by the lessee as a result of water leaks occurring in the leased premises during the term of the agreement.

III. The lessor had a duty to accept the lessee's tendered "final check" in order to mitigate any damages which it might have suffered as a result of the defendant's alleged breach of the lease agreement.

A determination of the correctness of the lessee's position on each of these three key issues is dispositive of the ultimate issue, that issue being whether the lessee is obligated to the lessor for outstanding rents and fees, and if so to what extent. Therefore, each of the issues raised by the lessee's positions will be separately examined and discussed.

#### I

At the end of the lease which is the subject of this suit the lessee held over in the leased premises for a period of approximately one month. According to the testimony, that extention was had with the acquiesence of the plaintiff.

Historically, any holdover by a lessee in a leased premises beyond the expiration date of the agreement could be treated by the lessor as an extension of the agreement. *Gladwell* v. *Holcomb* (1899), 60 Ohio St. 427. However, in the early part of this century, the Ohio Supreme Court modified the rule to provide that "* * * the parties are permitted to show what their true intention was, where the tenant remained in possession after expiration of his former term." *Bumiller* v. *Walker* (1917), 95 Ohio St. 344, 351.

In the case at bar, the unrebutted testimony of the lessee, corroborated by the lessor's property manager, was that it informed the lessor prior to expiration of the lease of its intention to vacate the premises and that it asked for, and received, permission to remain in the leasehold for one month beyond the term. The question raised under such cir-

4

cumstances is did the lessee's holdover refer back to the expired lease or was a new, separate oral contract created? Some guidance on this point may be gleaned from *Bumiller, supra.* Applying the rationale stated there to the facts here, it would appear that the lessee by continuing in possession, under an agreement with the lessor for an additional month's occupancy beyond the lease's expiration date, created a new contract. Thus, "* * * such possession could not be referable to the former leases without' showing that the landlords had repudiated their contracts prior to the time the continued possession began." *Id.* at 355.

Given the testimony presented at trial, the court can only speculate as to what the provisions of this new agreement might have been, with the exception, of course, of its term. The lessor maintains that it raised the rent. The lessee denies that it was ever informed of an increase, and maintains, further, that under Clause 20 of the lease agreement any increase in the rental rate could only have occurred after negotiations, which, it maintains, were not had. The burden of proof on this issue is on the lessor and if the inferences are equal, as they are here, the lessor has failed to carry that burden. Even though the provisions of the expired lease have no applicability here, had the lessor followed the notice provisions provided for therein when it attempted to inform the lessee of the rental increase, in all probability, the court would now reach a different result.

II

The general rule in Ohio regarding a lessor's liability for damage to a lessee's personal property is found in *Shinkle, Wilson & Kreis Co.* v. *Birney & Seymour* (1903), 68 Ohio St. 327. The syllabus of that case holds that "[t]he relation of lessor and lessee arises out of contract,

and, where there is neither express warranty nor deceit, the latter cannot maintain an action against the former on account of the condition of the premises hired."[2] The text of that decision sets forth the tests to be employed in determining the presence of deceit. Those tests are that:

1. The lessor has knowledge of defects in the premises;

2. The defects are not discoverable by the lessee upon practicable examination;

3. The defects will imperil that lessee's person or property; and

4. The lessor fraudulently conceals the defects. *Id.* at 334.

The court in *Herman* v. *Albers,* (C.P. 1912), 13 Ohio N.P. (N.S.) 98, 100, restated the general rule and went on to examine the question of warranty: "In the absence of fraud or an agreement guaranteeing the condition of the premises, there is no liability to the tenant on account of the present or future condition thereof * * *. The tenant, therefore, takes the premises as they are, with all their imperfections; he can not assert a right to rescind the lease, or can he avoid the payment of rent, or assert a claim for damages arising from the defective condition of the premises in the absence of an agreement or some fraudulent representation or concealment." That decision goes on to make it plain that "* * * the concealment of the defect by the landlord must have been at the time the lease was made or the renter took possession. A written warranty that the premises are in repair is obviously not broken because they subsequently became out of repairs [*sic*]. *Lyon* v. *Buerman,* 70 N.J.L. 620."

Mindful of these principles, the court has endeavored to employ them in determining the relative positions of the parties in this action. Under Clause 19 of the lease agreement, the lessee accepted the

---

[2] See, also, *Stackhouse* v. *Close* (1911), 83 Ohio St. 339; *Goodall* v. *Deters* (1929), 121 Ohio St. 432, 435; and *Partlow & Gates* v. *Monroe Twp.* (1932), 44 Ohio App. 447.

premises "as is." Under Clause 22 it agreed to maintain, at its expense, among other things, the plumbing system in the leased premises "in good order, condition and repair." The lessor warranted, in that same clause that "the building plumbing * * * from the source of supply to the meters of the leased premises" was "adequate for lessee's requirements, and * * * in good condition and repair" and agreed to keep it that way during the term of the lease. The parties agreed in Clause 4 that "all personal property of the lessee * * * located in or about the building or premises, shall be there at the sole risk of the lessee * * *," and further that the lessor would not be liable for any damage to such property "caused by water * * * the bursting or leaking of pipes, plumbing * * * except where such damage or injury is caused by the neglect of the lessor."

There is no interpretation that can be placed on the evidence presented in this matter that would reasonably support a conclusion that the lessor warranted the leased premises for the duration of the agreement. Neither would the evidence support a conclusion that the lessor fraudulently concealed any pre-existing defect on the premises from the lessee at the time that the lease was executed.

The evidence does support a finding that any problems that occurred with the plumbing involved pipes located *within* the leasehold. By the plain language of the lease such pipes were not covered by the lessor's warranty of the *connecting* plumbing.

The unrebutted evidence also establishes that the lessee's water leakage problems began well into the term of this agreement and many years after the lessee had originally taken possession of the demise. Thus, in the absence of any affirmative evidence to the contrary, it may not be said that the requisite elements have been presented to show deceitful conduct by the lessor which would require it to be held liable for the lessee's damages.

The defendant did not present evidence which substantiated its claim that the damage it suffered on January 5, 1981, and January 16, 1981, resulted from the negligence of the lessor's workmen. Thus, under the provisions of Clause 22 of the agreement, the lessor cannot escape liability for the damage sustained by the lessee on those dates. This is true even in light of the fact that the exculpatory language of Clause 22 clearly relieves the lessor of any liability for damages which the lessee may have suffered on August 4, 1980, September 22, 1980, October 27, 1980, October 29, 1980, or November 14, 1980.

### III

The phrase "mitigation of damages" typically encompasses three situations: (1) The plaintiff reasonably could have avoided a part or all of the consequences of the defendant's wrongful act; (2) the plaintiff received a benefit as a result of the defendant's wrongful act; or (3) in cases where the defendant's conduct is material to damages recoverable, his conduct was not as wrongful as plaintiff claims. See 22 American Jurisprudence 2d 280, Damages, Section 200.

The contentions of the defendant most nearly fit in the first category. It maintains that, by not accepting defendant's "final check," the plaintiff failed to mitigate its damages and therefore is not entitled now to recover the full amount prayed for. The argument is a novel one and warrants some discussion.

Contests between lessors and lessees frequently occur following the abandonment of the leasehold before the expiration of the term or as the result of a holdover. The lessor, in such cases, generally attempts to recover, as damages, the rental amount due and owing for the remainder of the term pursuant to the lease provisions.

Under the reasoning advanced by the defendant, it was the plaintiff's duty to accept the tendered "final check" in order

to reduce any outstanding indebtedness which the defendant might have had to the plaintiff. By so doing, it is asserted, the plaintiff would also have mitigated the accrual of interest on the principal amount.

In reviewing the Ohio case law in this area, the court notes that it could locate no authority for the defendant's position, nor has it been cited to any. In point of fact, this case differed materially from all those which the court surveyed.[3]

The lessee in the instant case did not abandon the leasehold before the expiration of the term. In fact, the lessee completed the additional term agreed upon by the parties prior to, but commencing at, the termination of the lease. Thus, all damages realized by the plaintiff had been suffered by the time the defendant quit the leasehold at the end of May 1981, and plaintiff has not sought to recover for a greater period.

The court, therefore, holds that the plaintiff was under no obligation to accept the "final check" tendered by the defendant. The principle of mitigation of damages has no application under these facts.

### Summary

Based on the foregoing analysis, the court concludes that the defendant-lessee's position on the first enumerated issue has merit, that its position on the second issue can be sustained in part, and that its position with regard to the third numbered issue is not maintainable.

It is therefore necessary for the court to delete from the amount prayed for a sum equal to the alleged rental increase for the month of May 1981. It must also delete from the prayer an amount equal to those damages which the defendant has shown that it suffered as a result of the negligence of the plaintiff's workmen on January 5, 1981, and January 16, 1981.

It is not possible to determine from the evidence presented at this hearing whether the minds of the parties ever met on a rental amount to be paid during the holdover period. The court, therefore, is required to proceed on the basis of quantum meruit to compute the appropriate measure of damages to be assessed for the lessee's failure to pay for its occupancy of the leased space after expiration of the agreement. This result is necessitated by the court's conclusion that the terms of the original lease were superseded by the oral agreement of the parties, which afforded the defendant the opportunity to hold over in the leasehold for a period of one month without creating a year-to-year tenancy as contemplated by the lease agreement.

Likewise, in the absence of specific evidence of an agreement between the parties, the court can award no more than statutory interest on any sums found due and owing.

Judgment is rendered for the plaintiff, and against the defendant, in the sum of $5,511.26[4] with statutory interest of ten percent per annum from November 27, 1981, plus the costs of this action.

*Judgment for plaintiff.*

---

[3] See, *e.g., Shaker Bldg. Co.* v. *Fed. Lime. & Stone Co.* (1971), 28 Ohio Misc. 246 [57 O.O.2d 486]; *White* v. *Smith* (1917), 8 Ohio App. 368; *Bumiller* v. *Walker, supra.*

[4] The court arrives at the amount to be awarded by employing the following equation:

Previous balances + May rent + Apr. & May electricity + Mar. & Apr. water − damages = award.

$1,280 + 3,700 + 1,202 + 47.26 − 718 = $5,511.26.