JOSEPH BROTHERS
COMPANY, Plaintiff,

v.

F.W. WOOLWORTH
COMPANY, Defendant.

No. C 83-1132.

United States District Court,
N.D. Ohio, W.D.

July 11, 1985.

James R. Jeffery, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, for plaintiff.

Edward M. Yosses, Aubry, Meyer, Yosses & Rudge, Toledo, Ohio, for defendant.

## OPINION and ORDER

WALINSKI, District Judge.

This cause came to be heard on cross motions for summary judgment filed by plaintiff, Joseph Brothers Company (Joseph Brothers) and defendant, F.W. Woolworth Company, Woolco Department Store Division (Woolco). Also before the Court are briefs in opposition to summary judgment filed by both plaintiff and defendant, plaintiff's reply in support of its motion for summary judgment, defendant's supplemental motion for summary judgment and plaintiff's reply to defendant's supplemental motion for summary judgment. This action is brought for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 Fed.R.Civ.P. Jurisdiction is predicated on 28 U.S.C. § 1332, diversity of citizenship. For the following reasons plaintiff's motion for summary judgment is granted in part and denied in part. Defendant's motion for summary judgment is denied.

## FACTS

In 1967, Joseph Brothers constructed a shopping center at the corner of Alexis and Lewis Avenues in Toledo, Ohio. Joseph Brothers entered into a lease agreement with Woolco as to one of the stores in the shopping center on October 14, 1968. The relationship between the parties as landlord and tenant was essentially without incident until September 24, 1982 when defendant announced its decision to close the Woolco store division. On October 4, 1982 defendant notified plaintiff, in writing, of its intent to discontinue operating its store in the leased premises. Included in the notice was a request by Woolco, that Joseph Brothers notify Woolco if Joseph Brothers did not intend to exercise its option to cancel the lease. Joseph Brothers replied by letter dated January 3, 1983 making it clear that it did not intend to cancel the lease agreement with Woolco and that Woolco would be bound by all terms, covenants and conditions of the lease. On March 11, 1983 Woolco entered into an agreement with Hills Department Store, a Division of SCOA Industries, Inc. (Hills), entitled "Sublease" with regard to the store which is at issue in this case. By letter dated April 15, 1983, Woolco informed Joseph Brothers that it intended to exercise the option contained in the lease to extend its term for a period of five years to expire on January 31, 1995.

Joseph Brothers filed a complaint for Declaratory Judgment in Lucas County Common Pleas Court on November 8, 1983. Upon the petition of Woolco, the case was removed to federal district court on December 16, 1983. Joseph Brothers alleges that Woolco has breached the lease by assigning it to Hills without having obtained written consent of Joseph Brothers. Further, plaintiff claims that as a result of Woolco's attempted assignment or sublease, the lease between Joseph Brothers and Woolco is voidable at the option of Joseph Brothers. Accordingly, Joseph Brothers requests the Court to release it from obligations under the lease, to order Woolco to pay compensatory damages in the amount of the difference between the rental payments made by Woolco to Joseph Brothers and the rental payments made by Hills to Woolco, and finally, to declare that the percentage rent provision of the lease remain in effect. Each party has moved for summary judgment.

## DISCUSSION

Rule 56, Fed.R.Civ.P. directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law

. . . . .

In ruling on a motion for summary judgment, the Court's function is to determine if any genuine issue exists, not to resolve any factual issues, and to deny summary judgment if such an issue exists. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the Court must construe the evidence in its most favorable light for the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). To summarize, if the movant demonstrates that he is entitled to a judgment as a matter of law, then the Court must next weigh the evidence in a light most favorable for the party opposing the motion; if reasonable minds could differ as to a material fact in issue, then a genuine factual dispute exists and the motion for summary judgment must be denied.

Rule 56(e) places a responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does

not permit such a decision. In relevant part the provisions states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P.

The initial issue before the Court is whether the agreement between Woolco and Hills constitutes an assignment or a sublease. Joseph Brothers submits it is, in effect, an assignment. Further, since Woolco did not obtain Joseph Brothers consent before assigning the lease, Joseph Brothers contends Woolco violated Article 15 of the lease which reads as follows:

Assigning, Mortgaging, Subletting

Art. 15. *Except as hereinafter provided, the Tenant agrees not to assign mortgage, pledge or encumber this lease without first obtaining the written consent of the Landlord.* The landlord agrees not to assign, mortgage pledge or encumber this lease or any of the rents becoming due hereunder without first obtaining the written consent of the Tenant, provided however, that such consent shall not be needed for an assignment· of this lease in the form of Schedule "C" attached hereto or for a transfer of this lease to the purchaser in connection with a bonafide sale of the demised premises or the premises of which the demised premises are a part. *The Tenant is hereby given the right to assign this lease to a corporation substantially all of the stock of which is owned by the Tenant, and to sublet the demised premises or any part thereof, but notwithstanding such assignment or subletting the tenant shall continue liable for the performance of the terms, conditions and covenants of this lease.* The Tenant further agrees that it will not without the written consent of the Landlord, which consent the Landlord agrees not unreasonably to withhold, sublet to a bank, super market or grocery store.

(emphasis added). Woolco, on the other hand, contends that the agreement with Hills entitled "Sublease" is in fact a sublease and as such may be entered into without the consent of the landlord pursuant to Article 15.

▬ "It is fundamental that the distinction between an assignment and a sublease lies in the extent to which the original lessee has parted with his interest." *Loral Realty Co. v. Beauty Development Corp.*, 114 Misc.2d 541, 542 N.Y.S.2d 362, 363 (1982). An assignment of a leasehold is a transaction whereby a lessee transfers his entire interest in the leased premises for the unexpired term. *Cross v. Commercial Real Estate Co.*, 16 Ohio N.P. (n.s.) 97 (1914). If a lessee makes a transfer of the leased property for less than the balance of the term he has made a sublease of the leased property. RESTATEMENT (SECOND) OF PROPERTY § 15.1 (1977). Further, the lessee must part with all of his reversionary interest in the property to create an assignment. *Cross v. Commercial Real Estate Co., supra.*

▬ The first term of the lease between Joseph Brothers and Woolco was to expire on January 31, 1990 with four successive options to extend it for any period of time not exceeding five years on each option. The agreement between Woolco and Hills was similar except that the first term expired on January 30, 1995, one day before the expiration of the second term of the Joseph Brothers-Woolco lease. Hills was granted three successive options to extend the term of the agreement for a period of five years. The effect of the agreement was that each term of the Woolco-Hills agreement expired one day before the expiration of the corresponding term of the Joseph Brothers-Woolco agreement. If each party extended its lease to the limits, the Joseph Brothers-Woolco lease would expire one day after the Woolco-Hills lease.

At first blush this would seem to satisfy the requirements of a sublease since, "[i]f a day of the term, or a particle of the estate be reserved, the transaction is not an assignment but a subletting." *Worthington v. Ballauf,* 6 Ohio Dec.Rep. 1121 (1882). The problem is that Woolco exercised its option to extend the term of the lease with Joseph Brothers so as to expire on January 31, 1995 after it had entered into the agreement with Hills which was to expire on January 30, 1995. Joseph Brothers submits that the timing of the two agreements precludes the finding that Woolco retained a reversionary interest.

It is clear that once a lease renewal option has been exercised, the term of the original lease is deemed to be enlarged to encompass the option period. *Loral Realty Co. v. Beauty Development Corp.,* 114 Misc.2d 541, 454 N.Y.S.2d 362 (1982). However, the question is whether the same is true if the sublease is entered into before the renewal option is exercised in the original lease. The holding in *Cross v. Commercial Real Estate Co.,* 16 Ohio N.P. (n.s.) 97 (1914) is directly applicable to the situation *sub judice.*

> Where a lease for a term of years contains an option of purchase on the last day of the term and also a clause of non-assignment without the written consent of the lessor, a new lease made by the lessee for a term extending beyond that of the original lease will not be treated as a ground of forfeiture for assignment without written consent but rather as a sub-lease, where it appears that the lessee acted with the intention in good faith of obtaining the fee on the last day of the term.

*Id.* Woolco clearly acted with the intention in good faith of exercising its option to extend the term of the lease until January 31, 1995 as evidenced by its letter to Joseph Brothers. This letter was dated April 15, 1983, approximately one month after the agreement was entered into with Hills, and five and one half years before its obligation to notify Joseph Brothers in order to preserve the right of renewal pursuant to Article 29 of the lease. The Court finds that

reasonable minds could only conclude that it was the intention of Woolco to sublease the premises to Hills, that Woolco made a good faith attempt to enter into a sublease, and that agreement meets the legal requirements to constitute it as a sublease rather than an assignment.

■ Plaintiff next asserts that even if the agreement is found to be a sublease, Joseph Brothers' consent is required in the event that the entire premises were to be subleased pursuant to Article 15 of the lease. This Court finds that it need look no further than the clear language of the lease in order to decide this issue. Article 15, in pertinent part, states, "[t]he tenant is hereby given the right ... *to sublet the demised premises or any part thereof,* but notwithstanding such assignment or subletting the tenant shall continue liable for the performance of the terms, conditions and covenants of this lease." (emphasis added). There is absolutely no language implying that consent of the landlord is required when the whole of the premises is sublet, unless the premises are subleased to a bank, supermarket, or grocery store. Hills is clearly none of these and accordingly Woolco is within its rights under the terms of the lease in subletting the premises to Hills without the consent of Joseph Brothers.

■ The final argument plaintiff makes in favor of forfeiture of the lease is that Woolco has breached its obligations with regard to payment of rent. Plaintiff asserts that Woolco was repeatedly delinquent in its rental payments throughout the period of July, 1982 through June, 1983. On May 9, 1983 Joseph Brothers notified Woolco that any future late payments would result in forfeiture of the lease. The following month Woolco made an untimely rental payment. Joseph Brothers claims this was a violation of Article 21 which states as follows:

Tenant's Default in Rent

Art. 21. It is mutually agreed that in the event the Tenant shall default in the payment of rent reserved when due, the

Landlord shall forward notice in writing of such default to the Tenant, and failure of Tenant to cure such default within thirty (30) days after the date of receipt of such notice shall at the option of Landlord work as a forfeiture of this lease.

The Court finds no violation of Article 21 based upon plaintiff's assertion in the motion for summary judgment and the affidavits of George O. Joseph and Oscar Joseph, Jr. Woolco had thirty days from the date of the notice of default in which to cure the default. It is not clear that Woolco failed to cure the default, in fact the only conclusion reasonable minds could draw from the assertions made by plaintiff is that Woolco did tender rent payment and such payment was accepted by Joseph Brothers. If plaintiff wishes to pursue an action based on nonpayment or late payment of rent, the clear course is an action in forcible entry and detainer pursuant to O.R.C. § 5321.01 *et seq.*

■ Since the Court has determined that a forfeiture is improper, the next issues to be addressed are plaintiff's arguments that it is entitled to monetary damages. The assignment between Woolco and Hills provided for substantially more rent than the lease between Joseph Brothers and Woolco. Plaintiff submits that equity demands that Joseph Brothers receive the difference in rental payments. Plaintiff has cited no basis in the law for such proposition, nor does the Court find any merit in such suggestion.

■ Plaintiff's arguments regarding the percentage rent clause, however, are quite persuasive. Plaintiff couches its discussion of this clause of the lease in terms of award of damages. Although the Court does not find a violation of the lease dictating forfeiture, enforcement of the contract necessitates a finding that the percent rent clause remains in effect despite the subleases. Article 5A of the lease between Joseph Brothers and Woolco provides for a minimum rent plus a percent of sales over a fixed amount. The clause, in pertinent part, reads as follows:

Art. 5A. On or before the first day of February following each full calendar year of the term of this lease (the first such calendar year to begin with January first of the year following the year in which this lease term commences), the Tenant agrees to mail or deliver to the landlord a statement sworn to by one of its accountants, showing the sales (computed as hereinafter provided) made by F.W. Woolworth Co. *and its licensees* in its store in the demised premises during the preceding calendar year.

Should the sum of

(a) ... 2% of the first $10,000,000 .., and

(b) ... 1% of the remainder of said sales (i.e. over $10,000,000 ...)

exceed the annual minimum rent payable for the same period covered by such statement, Tenant agrees that it will forthwith pay to the Landlord, as percentage rent due hereunder, a sum equivalent to such excess.

In computing such sales for the purpose of this article, the Tenant shall take the *total amount of sales of merchandise and services made in the demised premises,* whether for cash or credit, (excluding service or interest charges on credit sales and charges for delivery of any merchandise to customers) and deduct therefrom the following to the extent that same are included in the computation of sales: (1) all credits and refunds made to customers for services or for merchandise returned or exchanged; (2) all receipts from weighing machines, lockers, public telephones and public toilets; (3) all sums and credits received in settlement of claims for loss or damage to merchandise; (4) all taxes upon the receipt or purchases of merchandise by the Tenant or its licensees and all occupational sales taxes and other taxes upon or based upon the gross receipts of the tenant and said licensees or upon the sale or sales price of merchandise and which must be paid by the Tenant and said licensees whether or not collected by the Tenant and its licensees from customers

and whether or not the same may be commonly known as "Sales Tax".

(emphasis added). Plaintiff claims that the percentage clause played a material part in the negotiation of the lease and was made part of the lease agreement as a hedge against inflation and as a means of sharing in the hoped for success of the store. Since the execution of the sublease Woolco has failed to abide by the terms of the percentage clause. Woolco claims it is not required to pay the percentage of sales amount due to the following language in Article 5A:

> Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in any such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be the rent more particularly set forth in said Article 5, and the word "minimum" in said Article 5 shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraphs of this article shall be of no further force and effect.

Woolco argues that based upon the above cited clause, it is obligated only for the minimum rent of $200,000.00 as provided for in Article 5. To support its argument, Woolco relies on the "discontinuation of the operation of said store" language. It claims that "said store" refers only to Woolco and not to Hills.

This Court finds such interpretation, when viewed in light of all the circumstances and the other provisions of the lease, to be without merit. In coming to this conclusion, the Court relies upon the key language of Article 5A which provides that the percentage rent is to be computed based upon "the total amount of sales of merchandise and services made *in the demised premises*". (emphasis added). The focus is clearly on sales made in the prem-ises rather than the entity making the sales.

Even assuming, arguendo, that the "said store" language refers only to Woolco, and as such, conflicts with the "in the demised premises" language, the Court would rely on the well settled concept of contract law that ambiguous language in a contract should be most strongly construed against the drafter. *Cullen v. Government Savings and Loan Co.*, 37 Ohio Misc. 125, 316 N.E.2d 498 (1973). However, the Court need not take this step since there has not been any true discontinuance of the operations at the demised premises. There are still sales being made there by the sublessee.

Although the precise issue of whether defendant must be held to the percentage clause of the lease in an instance where the premises have been subleased appears to be a matter of first impression in Ohio, this Court finds that reasonable minds could come to but one conclusion. It would be ludicrous to find that Joseph Brothers would permit subleasing without its consent under the circumstance that the sublessee would be obligated only in the amount of minimum rent regardless of the volume of sublessee's sales. Virtually all persons entering into a percentage lease have the same fundamental intent. The business is to be operated diligently and the percentage rent clause operates as a means for sharing in the hoped for success of the store. All receipts representing profitmaking transactions reasonably related to the location should be included in the rental base. *See* Note, *Resolving Disputes Under Percentage Leases*, 51 Minn.L.Rev. 1139, 1149 (1967). Accordingly, this Court finds that Woolco is obligated to Joseph Brothers for rental payments pursuant to the percentage clause of the Joseph Brothers-Hills lease (Article 5A as amended June 13, 1969) based on Hills' sales receipts.

It is therefore,

ORDERED that plaintiff Joseph Brothers motion for summary judgment is granted in part and denied in part.

FURTHER ORDERED that defendant Woolco's motion for summary judgment is denied.

FURTHER ORDERED that this cause is dismissed.