**JOSEPH BROTHERS COMPANY,**
Plaintiff–Appellant,
Cross–Appellee,

v.

**F.W. WOOLWORTH COMPANY,**
Defendant–Appellee,
Cross–Appellant.

Nos. 85–3636, 85–3637.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 29, 1988.
Decided April 18, 1988.

James R. Jeffrey, argued, Susan B. Nelson, Spengler, Nathanson, Hehman, McCarthy & Durfee, Toledo, Ohio, for plaintiff-appellant, cross-appellee.

Michael J. Zavatsky, argued, Taft, Stettinius, & Hollister, Cincinnati, Ohio, for defendant-appellee, cross-appellant.

Before KENNEDY and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff, Joseph Brothers Company (Joseph Brothers), appeals and defendant, F.W. Woolworth Company (Woolworth), cross-appeals from an order of the district court granting in part and denying in part Joseph Brothers' motion for summary judgment. *Joseph Bros. Co. v. F.W. Woolworth Co.*, 641 F.Supp. 822 (N.D. Ohio 1985). Joseph Brothers argues that, as a matter of law, an agreement between Woolworth and SCOA Industries, Inc. (SCOA), is an assignment, not a sublease, and that Woolworth breached the terms of its lease with Joseph Brothers by assigning the lease without the consent of Joseph Brothers. Alternatively, Joseph Brothers argues that if the agreement with SCOA was a sublease, Woolworth breached the lease because, as matter of law, its terms provide that consent for subletting is required except for subleases to a subsidiary. Further, Joseph Brothers argues that if these determinations cannot be made as a matter of law, then genuine issues of material fact exist making summary judgment inappropriate.

Woolworth cross-appeals the grant of summary judgment for Joseph Brothers on the issue of percentage rent under the lease. Woolworth argues that when it discontinued operation of its store at the demised premises, the percentage rent provision was of no further force and effect as a matter of law. For the following reasons, we affirm the district court in its holding that the agreement was a sublease and could be made without consent, but reverse the district court in its holding that Woolworth continued to be bound under the percentage rent clause.

## I. Background

Joseph Brothers is the builder, owner, and operator of a shopping center in Toledo, Ohio. On October 14, 1968, Joseph Brothers and Woolworth entered into a lease agreement under which Woolworth would lease space and operate a Woolco store at the shopping center. As was often the case, this store would be the "anchor" store of the center, hopefully attracting other stores. The form lease was prepared by Woolworth as tenant and was used by it nationwide. Article 3 provided that the lease would terminate on January 31, 1990, unless sooner terminated or extended. Under Article 29, Woolworth had four successive options to extend the lease for five years each. Therefore, the lease could be extended until January 31, 2010. Written notice of exercise of the options was required a year in advance of the expiration of the lease.

In addition to the initial minimum annual rent of $200,000 provided for in Article 5 of the lease, Article 5A provided for a percentage rent based on the gross annual sales made by "Woolworth and its licensees in its store in the demised premises." Woolworth expressly reserved the right to discontinue operation of its store, and upon notice of this intention, the landlord had an option to cancel the lease within 90 days. If the landlord did not exercise this option and Woolworth did cease operation of its store, Article 5A provided that the rent then became the "minimum" rent and the provisions regarding the percentage rent were of no further effect.

No problems developed until 1982, when Woolworth publicly announced that it would close the entire Woolco division. On October 4, 1982, Woolworth notified Joseph Brothers in writing that it would discontinue operation of its Woolco store at Joseph Brothers' shopping center, and inquired whether Joseph Brothers intended to cancel the lease. By letter dated January 3, 1983, Joseph Brothers timely notified Woolworth that it did not intend to exercise its option to cancel the lease. The Woolco store closed at the end of January.

In an agreement entitled "Sublease," dated March 11, 1983,[1] Woolworth demised the premises of the Woolco store to SCOA for its operation of a Hills Department Store. The agreement expired January 30, 1995,[2] unless sooner terminated or extended, and provided for three successive options of extension for five years each. The agreement provided that within six months of operation, the annual minimum rent would be over $360,000, substantially more than the $230,000 minimum rent that Woolworth was then paying to Joseph Brothers.[3]

Woolworth notified Joseph Brothers of its intent to exercise its first option to extend the lease on April 15, 1983, thereby extending the lease until January 31, 1995. Since execution of the agreement with SCOA, Woolworth has not paid percentage rent to Joseph Brothers.

Two months after SCOA opened its Hills Department Store in September, 1983, Joseph Brothers filed an action for declaratory judgment under its lease in an Ohio state court. Woolworth successfully petitioned to remove the case to federal court under diversity jurisdiction. Cross-motions for summary judgment were filed. The district court determined that, as a matter of law, the agreement between Woolworth

and SCOA was intended to be a sublease and that it met the legal requirement of a sublease because Woolworth retained the reversionary interest of one day. The court further determined that, as a matter of law, the terms of the lease between Joseph Brothers and Woolworth did not impose an obligation on Woolworth to seek consent of Joseph Brothers to sublease. The court concluded, however, that Woolworth was bound by the percentage rent clause of the lease. Joseph Brothers appealed and Woolworth cross-appealed.

## II. Sublease or Assignment?

It is undisputed that Ohio law governs. In Ohio, leases are contracts and principles of contract law govern, including those regarding interpretation and construction. *W.F.I., Inc. v. Heberts Business Furniture Co.*, 12 Ohio Misc.2d 1, 465 N.E.2d 1360 (Cleveland Mun.Ct.1983); *Glyco v. Schultz*, 35 Ohio Misc. 25, 29, 289 N.E.2d 919, 923 (Sylvania Mun.Ct.1972). The Ohio Supreme Court has held that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978) (paragraph two of syllabus). "Furthermore, where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander*, 53 Ohio St.2d at 246, 374 N.E. 2d at 150 (citing paragraph one of syllabus in *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925)).

**1.** The district court found that the agreement was entered into on this date, although it apparently was not signed by Woolworth until April 14, 1983.

**2.** The term demised to SCOA would expire one day before the expiration of Woolworth's initial term plus a five-year extension under Woolworth's lease from Joseph Brothers.

**3.** Before the district court, Joseph Brothers argued that it was entitled to compensatory damages in the amount of the difference between the minimum rent due under its lease and the minimum rent due under the agreement between Woolworth and SCOA. This argument was rejected by the district court, *Joseph Bros.*, 641 F.Supp. at 826, and it is not an issue on appeal.

Under Ohio law, and common law generally, an assignment of a leasehold is a transaction in which a lessee transfers its entire interest in the leased premises for the unexpired term of the lease. *Cross v. Commercial Real Estate,* 16 Ohio N.P. (n.s.) 97 (Cuyahoga Cty. C.P. 1914). *See Restatement (Second) of Property* § 15.1, comment i (1977). If the lessee transfers less than his entire estate or the balance of the term, it is a sublease. *Jones v. Smith,* 14 Ohio 606 (1846). *See Restatement (Second) of Property* § 15.1, comment i (1977).

Joseph Brothers argues that the agreement between Woolworth and SCOA is an assignment because, at the time of its execution, Woolworth's lease with Joseph Brothers expired on January 31, 1990, and the agreement with SCOA expired on January 30, 1995. Therefore, Joseph Brothers argues, Woolworth conveyed all its interest (and more) in the lease, thus creating an assignment. Because Woolworth assigned the lease to an entity other than a wholly owned subsidiary without the consent of Joseph Brothers, it is contended that Woolworth breached the lease and the lease is terminated.

■ Woolworth argues, and the district court agreed, that Woolworth reserved the reversionary interest of one day, thus creating a sublease.[4] As the district court noted, the reservation of even one day of the term creates a sublease. *See Worthington v. Ballauf,* 6 Ohio Dec.Rep. 1121, 1121 (Cincinnati Super.Ct.1882) ("If a day of the term, or a particle of the estate be reserved, the transaction is not an assignment but a subletting."). The problem, however, as asserted by Joseph Brothers and recognized by the district court, arose because Woolworth did not exercise its option to extend its lease with Joseph Brothers from January 31, 1990, to January 31, 1995, until *after* Woolworth had entered into the agreement with SCOA, which would expire on January 30, 1995.

The Ohio Supreme Court has held that: A lease of real property for a specified number of years coupled with an option to extend or renew the same for an additional period gives the lease effect as an original present demise for the full term for which it might be made inclusive, contingent on the election to extend or renew.

*Corvington v. Heppert,* 156 Ohio St. 411, 103 N.E.2d 558 (1952) (syllabus paragraph two). In *Cross v. Commercial Real Estate,* 16 Ohio N.P. (n.s.) 97, 97 (Cuyahoga Cty.C.P.1914), the court held that:

Where a lease for a term of years contains an option of purchase on the last day of the term and also a clause of non-assignment without written consent of the lessor, a new lease made by the lessee for a term extending beyond that of the original lease will not be treated as a ground of forfeiture for assignment without written consent but rather as a sublease, where it appears that the lessee acted with the intention in good faith of obtaining the fee on the last day of the term, and of treating the new lease as a sub-lease and not as an assignment, and a proper tender of purchase was in fact made at the stipulated time, and the conditions of the new lease as to rental reserved, building conditions, insurance and right of re-entry are different from those in the original lease.

The district court held that the term of the original Joseph Brothers lease to Woolworth was deemed to be enlarged to encompass Woolworth's initial option period, even though the sublease was entered into before the option in the lease was exercised, because Woolworth "clearly acted with the intention in good faith of exercis-

---

**4.** In addition, Woolworth argues that it retained other reversionary interests in that it could cancel the sublease if SCOA ceased operating the Hills Department Store and Woolworth could cancel the agreement with 180 days' notice if SCOA failed to exercise its option to extend. *See Powder v. Neiss,* 7 Ohio N.P. (n.s.) 1 (C.P. 1908) (contract that provided that premises should be delivered back to conveying party at end of contract term or if rents not paid was a sublease and not an assignment). *See also Restatement (Second) of Property* § 15.1, comment i ("The tenant has made a sublease, even though the transfer is initially for the balance of the term, if the right to possession of the leased property may return to him upon the occurrence of some event."). The district court, however, did not decide this issue.

ing its option to extend the term of the lease until January 31, 1995." *Joseph Bros.*, 641 F.Supp. at 825. The letter from Woolworth exercising its option to extend the lease was sent within a month of its agreement with SCOA, and over five years before it was necessary to exercise the option to extend the lease. Therefore, the district court concluded that reasonable minds had to agree that Woolworth intended to sublease the premises to SCOA, and, when entering into the sublease, intended to exercise its option to extend the lease with Joseph Brothers. 641 F.Supp. at 825. *See F.W. Woolworth Co. v. Plaza North, Inc.*, 493 N.E.2d 1304 (Ind.Ct.App.1986) (sublease expiring one day before extension of overlease is valid sublease); *In re Lafayette Radio Elecs. Corp.*, 9 B.R. 993 (Bkrtcy. E.D.N.Y.1981) (valid sublease created even though terms exceeded lease term because tenant/sublessor had vested option to extend lease beyond sublease term).

Joseph Brothers argues that Woolworth did not act in good faith because Woolworth was negotiating with SCOA at the same time Joseph Brothers also was in contact with SCOA, did not inform Joseph Brothers of this, and deprived Joseph Brothers of the opportunity to lease directly to SCOA. Given that Joseph Brothers did not exercise its option to cancel the lease when the Woolco store closed, Joseph Brothers cannot now complain that Woolworth found a way to make a profit out of the situation in which Joseph Brothers placed Woolworth. Moreover, Woolworth complied with all provisions of the lease regarding the extension and so, as the district court held, acted in good faith. Accordingly, we affirm the holding of the district court that the agreement between Woolworth and SCOA constituted a sublease.

### III.  Consent Requirement

■ Joseph Brothers argues that even if the agreement between Woolworth and SCOA were a sublease, Woolworth breached its lease because Joseph Brothers' consent was not obtained. The trial court found, however, that as a matter of law the lease did not impose an obligation on Woolworth to obtain Joseph Brothers' consent to sublease the entire premises to SCOA for the Hills Department Store. *Joseph Bros.*, 641 F.Supp. at 825.

The lease provision at issue provides:

Assigning, Mortgaging, Subletting

ART. 15  Except as hereinafter provided, the Tenant agrees not to assign, mortgage, pledge or encumber this lease without first obtaining the written consent of the Landlord. The Landlord agrees not to assign, mortgage, pledge or encumber this lease or any of the rents becoming due hereunder without first obtaining the written consent of Tenant, provided however, that such consent shall not be needed for an assignment of this lease in the form of Schedule "C" attached hereto or for a transfer of this lease to the purchaser in connection with a bonafide sale of the demised premises or the premises of which the demised premises are a part. The Tenant is hereby given the right to assign this lease to a corporation substantially all of the stock of which is owned by the Tenant, and to sublet the demised premises or any part thereof, but notwithstanding such assignment or subletting the Tenant shall continue liable for the performance of the terms, conditions and covenants of this lease. The Tenant further agrees that it will not without the written consent of the Landlord, which consent the Landlord agrees not unreasonably to withhold, sublet to a bank, super market or grocery store.

The last sentence was typewritten; the rest was printed.

Joseph Brothers argues that the word "encumber" in the first sentence includes subletting, so that consent is necessary. It also argues that the phrase "to a corporation substantially all of the stock of which is owned by the Tenant" not only modifies the right to assign, but also the right to sublet, because the phrase "*such* assignment or subletting" indicates that both are referring only to agreements with subsidiaries. To provide consistency in its argument, Joseph Brothers maintains that the

consent necessary under the last sentence of the article when subletting to a bank, supermarket, or grocery store presupposes that these establishments are subsidiary entities. Therefore, under the interpretation of Joseph Brothers, all assignments and subleases require consent except assignments to subsidiaries of Woolworth and subleases to subsidiaries that are not banks, supermarkets, or grocery stores. Under this interpretation, however, subleasing is more restrictive than assigning, because Woolworth could assign its lease to a subsidiary bank or subsidiary supermarket without Joseph Brothers' consent, but could not sublet to such entities without consent.

Woolworth argues that, under the clear and unambiguous language of the lease, all assignments, except to subsidiaries, require consent, and all subleases, except to banks, supermarkets, or grocery stores, do not require consent. Moreover, even if "encumber" includes subletting, the unqualified right to sublet to other than a bank, supermarket, or grocery store is expressly granted in the lease, and therefore falls within the exceptions to the consent requirement.

Woolworth's interpretation is correct. As noted by the district court, the clear language of the lease decides the issue and "[t]here is absolutely no language implying that consent of the landlord is required when the whole of the premises is sublet, unless the premises are subleased to a bank, supermarket, or grocery store." 641 F.Supp. at 825. Furthermore, the decisions of other courts faced with the interpretation of this same provision in other Woolworth leases are in agreement. *See Coxe v. F.W. Woolworth Co.*, 652 F.Supp. 64, 67, 71 (M.D.La.1986) ("The lease itself unambiguously grants the tenant the right to sublet *except to a supermarket*"; landlord's approval not necessary for sublease), *aff'd*, 812 F.2d 1403 (5th Cir.1987); *F.W. Woolworth Co. v. Plaza North, Inc.*, 493 N.E.2d 1304, 1308 (Ind.Ct.App.1986) ("[Article 15 of] the overlease forbids an assignment without the consent of the landlord, but does not forbid Woolworth from subleasing the premises"); *Fair Investors,*

*Ltd. v. F.W. Woolworth Co. (In re Fair Investors)*, 85 B.R. 733, 734 (Bankr.W.D. Tex.1987) (lease clear and unambiguous that consent not necessary before Woolworth executed subleases). *See also Blair Mill Ltd. v. F.W. Woolworth Co.*, No. 86–2841, LEXIS slip op. at 3 (E.D.Pa. Feb. 25, 1987) ("The lease also gives Woolworth the right to sublet all or part of the demised premises" and no indication in the court's opinion that Woolworth had landlord's consent), *aff'd*, 833 F.2d 303 (3d Cir.1987).

Accordingly, we affirm the district court's determination that the sublease by Woolworth to SCOA did not require the consent of Joseph Brothers.

## IV.   Percentage Rent under the Lease

■ In its cross-appeal, Woolworth argues that the district court's holding that the percentage rent provision of Joseph Brothers' lease was still in effect and that Woolworth was obligated to Joseph Brothers for rental payments under the terms of the lease based on SCOA's sales on the demised premises is erroneous as a matter of law. The disputed provision of the lease provides:

Art. 5A.   On [February 1st, annually], the Tenant agrees to mail or deliver to the Landlord a statement sworn to by one of its accountants, showing the sales (computed as hereinafter provided) made by F.W. Woolworth Co. and its licensees in its store in the demised premises during the preceding calendar year.

Should the sum of

(a) 2% of the first $10,000,000, and

(b) 1% of the remainder of the sales (i.e. over $10,000,000) exceed the annual minimum rent payable for the same period covered by such statement, Tenant agrees that it will forthwith pay to the Landlord, as percentage rent due hereunder, a sum equivalent to such excess.

In computing such sales for the purpose of this article, the Tenant shall take the total amount of sales of merchandise and services made in the demised premis-

es, whether for cash or credit, [with certain exclusions and deductions].

. . . . .

Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention so to do and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within ninety (90) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate ... and the Tenant shall be released from any further liability under this lease.

Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in any such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be the rent more particularly set forth in said Article 5, and the word "minimum" in said Article 5 shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraphs of this article shall be of no further force and effect.

Woolworth's argument focuses on the last two paragraphs of the above quoted Article 5A. Woolworth contends that since it is undisputed that no Woolco or related store has operated in the demised premises since January, 1983, the only rent due under the lease is the fixed minimum rent of Article 5. The phrase "its said store" in the first sentence of Article 5A, Woolworth argues, refers to stores operated by Woolworth only and not to stores operated by sublessees of Woolworth.

Joseph Brothers argues that there is an implied covenant that Woolworth must pay percentage rent when its sublessee is making sales in the demised premises, and contends that Woolworth and the other courts that have addressed this issue fail to construe Article 5A as a whole. Joseph Brothers points to the language requiring that the percentage rent be computed on "the total amount of sales of merchandise and services made in the demised premises" and requiring that the annual sales reports show sales "made by F.W. Woolworth Co. and its licensees." Joseph Brothers also notes the language of Article 15 requiring Woolworth's continuing performance of the terms of the lease in the event of a sublease.

By affidavit, Joseph Brothers contended that it would not have entered into the lease with Woolworth without the percentage rent agreement because the expected profit was from the percentage rent clause. The district court, in deciding the issue for Joseph Brothers, reasoned that it would be "ludicrous to find that Joseph Brothers would permit subleasing without its consent under the circumstance that the sublessee would be obligated only in the amount of minimum rent regardless of the volume of sublessee's sales." *Joseph Bros.*, 641 F.Supp. at 827.

The district court found that the focus of the percentage rent clause was upon the "sales made in the premises rather than the entity making the sales." 641 F.Supp. at 827. Moreover, the court determined that there was no "true discontinuance of the operations at the demised premises" because the sublessee was still making sales; therefore, the clause making Article 5A of no effect was never called into play. 641 F.Supp. at 827.

Other courts addressing this issue have concluded that, as a matter of law under the clear and unambiguous language of the lease, Woolworth is no longer obligated under the percentage rent provision because once Woolworth discontinues operations and the landlord chooses not to terminate the lease, the percentage rent provision is effectively deleted from the lease and Woolworth must pay the annual rental amount only. *F.W. Woolworth Co. v. Buford–Clairmont Co.*, 769 F.2d 1548, 1555 (11th Cir.1985); *Coxe*, 652 F.Supp. at 70; *Blair Mill Ltd.*, LEXIS slip op. at 6; *In re Fair Investors*, 85 B.R. 733, 734; *Plaza*

*North,* 493 N.E.2d at 1310–11. Furthermore, although Article 34 provides that "licensees" refers to subtenants and concessionaires, the use of the term in Article 5A does not refer to Woolworth's subtenants after it has discontinued operations, but only to Woolworth's concessionaires and subtenants while it is still operating its store. *Blair Mill Ltd,* LEXIS slip op. at 6.

We determine that the clear and unambiguous language of Article 5A requires the result reached in the cited cases, namely, that the percentage rent provision is no longer of any force or effect. Accordingly, the district court must be reversed on this issue.

Therefore, we AFFIRM the decision of the district court denying in part Joseph Brothers' motion for summary judgment on the sublease and consent issues, REVERSE the decision of the district court granting in part Joseph Brothers' motion for summary judgment on the issue of the percentage rent provision, and REMAND for entry of judgment consistent with this opinion.