DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Toledo Municipal Court, in which the trial court found, on remand, that a "management agreement" entered into by appellants, Naqid Hasan and Yazeed Qamari, the owners/shareholders of Mighty Mart USA, Inc., and brothers Nabil Shannak and Samir Shannak, constituted an illegal sublease that entitled the landlord, appellee Duane Tillimon, to evict appellants from the leased property.
On appeal appellants set forth the following as their sole assignment of error:
"The trial court's finding and judgment on remand from this court on the issue of whether the management agreement as executed constituted a sublease under the terms of the original lease agreement, because the appellee had not consented to the same, was against the manifest weight of the evidence and contrary to law."
On December 30, 1999, appellee Tillimon entered into a ten-year lease agreement ("original lease") with appellant Hasan, in which Hasan agreed to lease a building from appellee for the purpose of operating a convenience store. At the time the lease was signed, Hasan was doing business as Mighty Mart USA. Shortly after the lease was executed, Hasan incorporated his business as Mighty Mart USA, Inc., with Hasan owning half the shares of corporate stock and Yazeed Qamari owning the other half of the shares.
On September 8, 2000, Hasan and Qamari, as "owners" of Mighty Mart USA, Inc., entered into a one-year "management agreement" with two brothers, Nabil and Samir Shannak, whereby the brothers agreed to operate the convenience store and assume responsibility for all the debts of the business, in exchange for keeping all the business profits.
On February 26, 2001, Tillimon filed a landlord's complaint in Toledo Municipal Court, in which he sought to evict appellants from the leased premises. Appellee alleged in the complaint that the rent for February 2001, and reimbursement for certain common area expenses specified in the lease had not been paid. Tillimon further alleged that appellants were in violation of Article 7 of the lease, which states that the premises cannot be sublet without the landlord's permission.
A hearing was held on October 1, 2001, at which testimony was presented by Tillimon and Hasan. Tillimon testified at the hearing that, in his opinion, the management agreement was actually a sublease, which was prohibited without his express permission, because it transferred the responsibility to pay rent to the Shannaks for a period of at least one year. Tillimon further testified that he did not approve of either Qamari or the Shannak brothers as subtenants.
Hasan testified at the hearing that, in his opinion, the management agreement is not a sublease because Qamari is a co-owner of Mighty Mart, U.S.A., Inc., and the Shannak brothers were employed by the corporation to run the store. Hasan further testified that Tillimon was aware that Mighty Mart U.S.A., Inc. became incorporated after the original lease was signed, and he was not told that Tillimon disapproved of Qamari and the Shannak brothers until the notice of eviction was served.
On October 17, 2001, the trial court filed a judgment entry in which it found that there was no default on the obligation to pay rent, and denied the complaint to evict appellants from the premises. The trial court also found that Tillimon failed to give proper notice of eviction under the terms of the lease and Qamari, as a shareholder/co-owner of the corporation, was not in possession of the premises without Tillimon's permission. A timely notice of appeal was filed.
On September 6, 2002, this court affirmed the trial court's judgment. Tillimon v. Hasan, 6th Dist. App. No. L-01-1455, 2002-Ohio-4650. Thereafter, Tillimon filed a motion for reconsideration in this court, in which he argued that we failed to consider on appeal the issue of whether the management agreement constituted an illegal sublease. On October 10, 2002, this court agreed with Tillimon that the trial court and, in turn, this court, failed to consider the issue of whether the management agreement was a sublease, and reversed and remanded the case so that the trial court could make that determination. On February 5, 2003, the trial court filed a judgment entry in which it found that "the management agreement as executed constituted a sublease" to the Shannaks, to which Tillimon, as the landlord, had not consented. A timely notice of appeal was filed on March 4, 2003.
On appeal, appellants assert that the trial court's finding as set forth above is against the manifest weight of the evidence and contrary to law. In support thereof, appellants argue that the management agreement was not a sublease because the Shannaks were employees of Mighty Mart U.S.A., Inc., and Hasan retained full control over the running of the business. Appellants further argue that, even if the management agreement were a sublease, any objection to it was waived because Tillimon was aware of the arrangement between Hasan, Qamari and the Shannaks, and acquiesced to it for a period of six months before he began eviction proceedings.
Generally, a trial court's judgment will not be reversed on appeal as being against the manifest weight of the evidence, if it is supported by "some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. In making this determination, we are guided by the presumption that the trier-of fact's findings are correct, because the trial judge is in the best position to view the witnesses, observe their demeanor, and weigh their credibility. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
Our review of Ohio law has revealed no authority that distinguishes a "management agreement" from a "sublease." However, the Federal Court of Appeals for the Northern District, construing Ohio law, has stated that if a lessee transfers less than his entire estate for the balance of the term of the lease, it is a sublease. Joseph Bros. Co. v. F.W. Woolworth Co.
(N.D.Ohio 1988), 844 F.2d 369, 372, citing Jones v. Smith
(1846), 14 Ohio 606; Restatement (Second) of Property § 15.1, comment i (1977).
In addition to the testimony set forth above, the record contains copies of both the original lease and the management agreement. The original lease states, in relevant part:
"Section 7.01. Tenant shall have the right to sublet the premises subject to the approval of Landlord which shall not be unreasonably withheld, provided, however, that Landlord reserves the right to condition said assignment upon the approval of the proposed subtenant's financial statement and require the present Tenant to guarantee the balance of the term of the lease."
The management agreement executed by Hasan, Qamari, and the Shannaks, states, in relevant part:
"1. The term of the agreement shall extend from the 1st day of August 2000 to the 31st day of July 2001, and yearly thereafter with either party having the right of cancellation by giving a thirty (30) day written notice prior to the commencement of a new yearly period.
"* * *
"3. Management Company is hereby charged with the sole and exclusive management of said business and the exclusive use of said buildings at the premises location, and shall provide Owner with the services customarily provided in such instances."
"* * *
"5. All costs, expenses, losses, or damages incurred in the operation of said business shall be borne by the Management Company and all profits shall inure to the Management Company * * *."
As to whether the management agreement was actually a sublease, the record shows that the management agreement gave the Shannaks full and "exclusive use" of the business premises for at least one year, along with the right to retain all profits from running the business. In exchange, the brothers were to take on the responsibility of paying all business expenses, including the rent.
As to whether or not Tillimon waived his right to object to the management agreement, Hasan testified at the hearing that Tillimon was aware that the management agreement was executed in August 2000. However, the record contains no evidence of how Tillimon was made aware of the agreement, or when he received notice of its existence. It is undisputed that the Shannaks did not provide Tillimon with financial statements and Hasan did not agree to guarantee the original lease obligations during the time the management agreement was in effect. In addition, the record contains Tillimon's unrefuted testimony that he continued to go to the store each month to receive the rent from the time the original lease was signed until February 2000, and that the rent check was never signed by the Shannak brothers.
This court has reviewed the entire record in this case and, upon consideration thereof and the law, finds that the record contains competent, credible evidence to support the trial court's conclusion that the management agreement was, in actuality, a sublease, to which the landlord, Tillimon, did not consent. Accordingly, appellants' sole assignment of error is not well-taken.
The judgment of the Toledo Municipal Court is hereby affirmed. Costs of these proceedings are assessed to appellants.
Judgment Affirmed.
Peter M. Handwork, P.J., Richard W. Knepper, J. and Mark L. Pietrykowski, J., concur.